## THE WIMBLEDON.

(District Court, S. D. New York.  December 30, 1922.)

Shipping ⊜⇒132(5)—Ship held not to have explained damage to cargo under clean bill of lading.

On libel to recover for damages to a cargo of olive oil shipped in barrels of different sizes and received by the vessel under a clean bill of lading, evidence *held* not sufficient to show that the damage resulted from improper or insufficient barrels, or from storms encountered by the vessel, and therefore not to discharge the burden of explaining the loss.

⊜⇒For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

In Admiralty. Libel by Musher & Co., Inc., against the steamship Wimbledon, to recover for damage to a cargo. Interlocutory decree granted to libelant.

Bigham Englar & Jones, of New York City (Henry B. Potter, of New York City, of counsel), for libelant.

Kirlin, Woolsey, Campbell, Hickox & Keating, of New York City (Earl Appleman and L. De Grove Potter, both of New York City, of counsel), for claimant.

AUGUSTUS N. HAND, District Judge. This is a suit to recover for damage to a cargo of olive oil, shipped from Barcelona to New York, under a clean bill of lading. Capt. Bagger did not see all of the libelant's cargo, or even all of the damaged cargo, but the barrels which he saw apparently had sufficient hoops.

Capt. Gebauhr, who saw the barrels as stowed in the ship after it arrived in New York, testified that there was insufficient dunnage and that large and, small barrels were stowed together. He also said that the barrels on which a number of tiers of almonds were piled, should have had platforms to prevent pressure upon the lower barrels. The master of the vessel stated that in the No. 1 hold there were four tiers of barrels in the after part, and three tiers in the fore part, and that on these barrels there were eight or nine tiers of bags containing nuts and almonds.

The claimant insists that damage caused to the cargo of olive oil was due either to defective barrels, or the rolling of the ship in 12 days of heavy weather, or, both. In regard to defectiveness of the barrels, I have read the depositions carefully, and given further consideration to the testimony taken at the trial, and find really no evidence that there was anything the matter with the barrels when they were shipped, nor is there in my opinion sufficient evidence of rough weather to explain the damaged condition of the cargo when it arrived in New York. While there was undoubtedly rough weather, it was not unusual. Even the supercargo, Jacques Aubert, who was and still is an employee of the claimant, admitted that while the weather was very bad, he had seen "many times worse than that." The captain's account of the rough weather, also, is not impressive.

Gebauhr testified that a good many of the barrels showed signs of cargo pressure, five or six had their hoops out, and many were leaking at the end. On the other hand, the stevedore, Avesa, while admitting that small barrels were stowed with large ones in some places, insisted that he regarded the dunnage as sufficient, and said that the cargo piled in tiers over the barrels was too light to require platforms. He testified that the small barrels were in good condition, but that the larger ones were too large, and had not sufficient hoops. It is thus apparent that witnesses for the claimant are attributing the damage (1) to the storm; (2) to improper containers. The 80-ton containers (which was the volume of the large ones) were shown to be of no uncommon size. The ship receipted for them in good order and condition. They were coopered at the time of shipment wherever necessary to make them tight.

The testimony of Capt. Bagger, an expert of high credibility, to the effect that the large barrels which he saw had eight iron hoops and six wooden hoops, I think disposes of the claim of insufficient hoops. The damage here was probably due to stowage of barrels of different sizes next one another without proper dunnage. In any event claimant has not met the burden of explaining the loss and showing that it was due to either perils of the sea, or to weak or defective containers.

An interlocutory decree is therefore granted to the libelant, with the usual reference.